and Safe Horizon, Inc. And if you'll hang on just one second. Is that? And Mr. Jensen? Yes. Whenever you're ready. Thank you. Good morning, Your Honors, and may it please the Court, my name is Curtis Johnson. I represent 216 East 29th Street, along with Marcus Sacco and Shawna Sacco. Mr. Sacco is actually here in the courtroom. The City unabashedly mandates participation. It's a complicated case. It is. But at the outset, it's an easy question. The question is, is a trust, in this case a plea trust, the proper plaintiff, in this case? Because can trusts, as opposed to the trustee or a beneficiary, can the trust itself bring this forward? Well, that's a reasonable question, Your Honor. And I would point to the fact that the trust is not only a party in this case, it's also a party in the Division of Human Rights prosecution. So the trust — the Division of Human Rights and the City of New York believe that the trust can be sued because they are suing it in the Division of Human Rights matter that's sort of tangential to this. I see. Okay. So that makes — it qualifies, essentially, as a party in this case. I think it does. And if it doesn't, for some reason, if this case is not jurisdictionally proper because the trust is the party, I would point — I would point to the fact that Mr. Sacco, who's here in the Court, signed the complaint and verified it. He and his client, the beneficiary, submitted declarations. They could easily be substituted for the other parties. And to not reach the merits, or at least the jurisdictional question on this case on that issue, would be — But why is this case properly before us? You know, you raise some serious Fourth Amendment issues, which may or may not be valid, but why aren't they all appropriately first viewed in the state? And why isn't Younger, which you say doesn't apply because it's facial, but that's nonsense because Younger itself was a facial case. The question is whether the state proceedings are able to deal with it, and you actually concede that everything can be raised there. So we don't really know what the state is going to do or not do. And only when that is done can we see if any of your issues are real. Well, respectfully, Your Honor, I believe that we should be here, because in order to raise a facial challenge, we don't do that in the context of a — or an administrative proceeding or even the appeal, the Article 78 appeal of that. Why? Because it has to be done in the context — under the CPLR, if we were in State court, under the context of an action. And actions and special proceedings are two different animals. If it's an action in State court, we might as well have the action in whichever court my client chooses to appear. And that, because of Section 1983, my client brought the action in Federal court. Your Honor, we don't know at this stage how the state would act with respect to your being able to make your claims or not. It's just —  I hear that you have some things, and you know signing doesn't give away, doesn't consent. All of that is there, but — Well, to be honest, Your Honor, I think that signing the HAP contract would be problematic. Being forced to sign the HAP contract under penalty of compulsion, under penalty of contempt of court and potentially a misdemeanor would be problematic for my client. My client would probably take the misdemeanor over signing the HAP contract, because they don't want to waive their Fourth Amendment right. I understand your question, I guess, to be a question of rightness and a question of whether the courts — we need to let the state court process play out. But here, and what Patel tells us, is that being put to the question of your Fourth Amendment rights versus prosecution is a dilemma that the court cannot allow to happen. If it were the case that we said this has to go first in the state oath proceedings, put you in the position where you actually either had to give away your rights or face criminal penalty, then you would have a right, of course. But I don't see that that is the situation that is before us now. Explain to me why you say that unless we act, you are put in this situation. Well, because before — as soon as my clients were approached and asked to sign this, and as soon as the Division of Human Rights reached out to them and said, by the way, if you don't sign these agreements, if you don't sign a HAP agreement, if you don't allow the HQS inspection, if you don't even submit the form that would give rise to the HQS inspection, then we're going to prosecute you, that alone is problematic for my client. Being prosecuted, putting put to the dilemma is — Is your — I mean, the way you framed, I think, a lot of your arguments are that you're going to be subject to an unlawful search. And that aspect, to me, does seem not — I don't see how you get to that when you haven't signed the contract. Events have not happened — events have not — have happened where this — a search is either imminent or likely. As to the claim of search, well, I have a question with that. And then to follow up after you respond to that, I want to — I'd like you to get back to this question of your claim that this is a facial challenge, which I don't understand how it's a facial challenge when there is nothing in Local Law 10 that talks about authorizing searches. There's nothing in the face of those provisions that talk about searches. Sure. Well, to start out, to answer your first question, being put to the dilemma of participating in Section 8 is itself a violation of the Fourth Amendment. That's what Patel tells us. That's what — when it says — and when it's citing to Camara, and it says that no business owner should be put to this question, that kind of — this kind of choice, we shouldn't have to be put to that choice. Sorry. I lost your first question and your second question. Yeah. Well, I — well, the second one was about facial challenge. But just to follow up on what you just said, the choice that you're being put to that you say, you know, Patel says you shouldn't be put to — Is a waiver. So under your view, despite the fact that you have not signed a contract — Well, the contract is part of it, right? So there's two — there's two stages of inspection. The first stage is a tenant comes to you with a voucher. They say, I'd like to use Section 8. And they bring a form. It's a HUD form. And I've — there's a copy — there's a — there's a URL — a link to it in my papers. The form is signed by both the tenant and the landlord. And it's submitted to the PHA. And it essentially invites the Housing Quality Standards search, the H2S search. So the first step is, here, sign this form, have an H2S search. If then the PHA approves the property, that's when you sign the HAP contract. So the HAP contract doesn't get signed right away, but there's a search well before the HAP contract. But what is the nature of that search that you tell us we are in a position now to say that that might violate the Fourth Amendment as against waiting and seeing what it is that they are trying to do. And then in state court or in state proceedings, you know, state courts apply the Fourth Amendment as well. And actually, in many ways, New York has a stricter search requirement than the federal one. How do we know now that what is going to be done if you sign this will be something that violates the Fourth Amendment? How are we in a position to decide the case? I guess my point is it doesn't matter. Because by signing away your — Why does it not matter? Because you're asking us to say something about searches and seizures without knowing what the search and seizure is. Sure. And so there's certainly instances — I'm sure the Court has seen many, many instances where there's a question of a search that's already happened, and you're left to answer the question of, was that search legal or not? And is the evidence that was gathered from that search allowed at trial or not? That's not the question we're here to answer today. The question is, should the search occur in the first place? Should the government be allowed to come in? But there are searches that are reasonable. The Fourth Amendment speaks of unreasonable searches. That's right. So how do we know that what search that you would be putting yourself in the way of is one that the Fourth — that the State would do, which would violate the Fourth Amendment or the State equivalent? Because any search that's tinged with coercion, with the threat of penalty, is a violation of the Fourth Amendment. If you go in and you say to somebody, I want to search your Well, if you don't let me, I'm going to penalize you, that's a problem. We have any number of cases where somebody is coerced to answer their name when they're walking down the street. And we say that's not an unreasonable search. And yet they're coerced to do something. The fact that somebody is coerced to do something doesn't make that an unreasonable search. Most of them — many are, many are not. Well, respectfully, the Supreme Court in Patel says — tells us that telling someone that they're going to be criminally penalized for not subjecting themselves to a search That is certainly the case. That is, if something is an unreasonable search, then telling somebody that you will be penalized unless you consent to it violates that. But you're back to — I'm back to asking, but is the thing that they would be asking you to do something that is an unreasonable search? Well, certainly it is. My client is — assuming my client is an individual, assuming my client can't be a trust, right, then he's got cell phone records — he's got records and e-mails relating to this apartment on his cell phone. And the PHA, when you sign it, says we can search any computerized device that contains those records. And you have to give us access to that. So clearly someone's cell phone is something that's protected by the Fourth Amendment. I see my time has expired. If I can be allowed to answer. Yes, please. And also then, just to follow up, and this is somewhat related to this idea of not knowing the particulars of what you're talking about here and whether or not this is, in fact, a facial challenge, if you could speak to that as well. And continue your answer, though. Yeah. So essentially — sorry about the timer. Essentially, my client is exposing his home, his cell phone, any place his records are kept, to a waiver, an advance waiver saying that the government can come in. He can't later say — well, he could later say, I was coerced into it. But how do we prove that, right? So we're in a situation where someone comes to you with a Section 8 voucher, and you agree you're going to participate because you don't want to get penalized by the government. And then you sign the PHA. Then the government comes in. They want to search your home. They want to search your computerized device. And only then do you say, well, no, I was How do we prove that? How do you distinguish between someone who consented in their mind for whatever reason? How do they prove what's in their mind later? They have to defend themselves in advance. They have to say in advance, here, no. And this, you say, makes this a facial challenge because that was the question that you raised. That's right. And I'm trying to answer your question first. Yes, but again, a facial challenge, I just don't — So — Where in the face does Luca Lawton — Yeah, so the question is, Luca Lawton essentially incorporates and adopts, incorporates by reference, all of the HUD regulations. When they say you have to participate in Section 8, they're saying you have to do everything that Section 8 includes. Sign the HAP contract. Have HQS searches. You can't have a part of it. You can't have Luca Lawton say, only do these small pieces of what Section 8 entails. In fact, one of the HUD regulations, Section 982.53d, says the state can't change the way HUD applies. But are there ways in which Luca Lawton can be constitutionally applied? Because isn't that the question when you're talking about a facial challenge, that you're saying that a law, in all its applications, it cannot be, you know, constitutionally applied? And what are the constitutional applications of this law? So that's certainly an area of issue framing, right? So we can frame the issue very broadly and say, all of Luca Lawton, can you ever have Luca Lawton apply to any kind of voucher? That's issue framing very broadly. If we issue frame appropriately and say, do what the Court is supposed to do, and narrowly snip out or narrowly restrict the portions of the law that violate the Fourth Amendment, then what the Court would do is say, as applied to Section 8, whenever the Luca Lawton is used to require a landlord to participate in Section 8 as opposed to some other voucher program that doesn't have all the strictures and the parts that HUD places on Section 8 participants. So what we would really have the Court do is there's a definitional section within Luca Lawton that defines source of income as Section 8 vouchers. We would say, no, it doesn't include Section 8 vouchers because requiring people to participate in Section 8, that is a violation of the Fourth Amendment. So you're not saying all of it. You're saying the part that applies to Section 8. All right. All right. Thank you. I think we have everyone. You have some rebuttal time. Thank you. Good morning, Your Honors. Alina Drucker on behalf of the city. I think as we've discussed, first of all, this case was properly dismissed. You're going to have to slow down a little bit because it's a little, not your fault. Okay. This case was properly dismissed under Younger because there is an ongoing civil enforcement proceeding, not one, not a criminal proceeding, which I think was the implication, but that's irrelevant. There is an ongoing civil enforcement proceeding against not just the trust. The trust, the trustee are named in that proceeding. And in that proceeding, they will be able to assert their claim that Section 8 is somehow a violation of their Fourth Amendment to require them to comply with Section 8. That, by the way, is entirely untrue. But from the outset, there's an opportunity for them to litigate that claim in their state court proceeding. And this court does not ordinarily interfere with an ongoing civil enforcement proceeding in state court. Now, is there a concession on their part that they can raise everything in state proceedings? They have said that they can't, and that's untrue. What they say is that there are limitations about on the remedies they can get from oath directly, which is the state administrative court, that it precedes the state judicial process that they'll then get. And in that state judicial process, they can raise every single one of these arguments. That's in Article 78? Correct. And the way it works in New York State, which is this argument about it being a special proceeding versus a plenary proceeding, it's a little complicated. But all it means is if you institute an Article 78 proceeding and you seek relief like a declaratory judgment that the law is unconstitutional on its face, the court will sua sponte convert it to a hybrid proceeding. It's just a procedural mechanism that allows the remedy to go beyond. It's like an APA claim. You add the declaratory relief in it. Think of it that way, right, that it's a question of invalidating. The Article 78 is whether the agency's action was arbitrary or capricious and unlawful. As to them, they would say it's unlawful because it violates my Fourth Amendment. And if they want declaratory relief, they ask for that as well. So all of the remedies that they're asking for and all of the questions they want to pose here, they can pose in state court. And all of those claims will be equally meritless in state court for a number of reasons, if you have – I can happily talk about younger. But in addition, they don't have standing to bring the claim here because this is so speculative. This is not ripe. And in the same way, they don't have a concrete injury. But standing and ripeness are different things. And I think it's very hard for you to say that they would not be injured, which is really what I'm interested in for standing. I mean, I hear the ripeness notion that somehow we may not know. But to argue standing, that just doesn't make much sense to me, frankly. Well, I think that there are several Supreme Court cases that talk about ripeness as a moment in time for standing. So whether we do that or not, the point is it's not ripe because there hasn't been a search. We've been talking about these hypothetical searches, a hypothetical search of their – that would seize their cell phones. That's not – But you do concede that if the choice were between allowing a search, which is violative of the Fourth Amendment or estate equivalent, and paying a penalty, that that would be a right time to make a claim. That is exactly what Patel says, and that's not the scenario here.  So what Patel says is if the law is set up so that they come to your door and they say, here we are, give me your records on your hotel tenants right now or face arrest and penalty. You do not have an opportunity for pre-compliance review. So even if it's an administrative warrant, in that case it's questionable if it really was an administrative warrant because it was seeking out criminality. But putting that aside, here we have basically the equivalent of an administrative search. So with an administrative search with an abundant amount of pre-compliance review, even if we assume that the real estate market in New York City, that low income housing in New York City is not a heavily regulated market in which every participant who puts voluntarily their material into the marketplace doesn't already know that they will be asked to prove habitability, which is all that HQS search. It's not a search. It's a check that, for example, there is hot water and they don't physically inspect. They don't need to physically inspect the site. It's whether the unit qualifies under a sort of a checkmark system. There's no search. And this goes to two points I think are related and useful to one of the, a few of the questions that you just asked, which is for the standing purpose, does the trust have any Fourth Amendment rights? I will put aside whether this is the plaintiff, whether the plaintiff really is what should be the trustee, which it should be, and that's a separate issue that there's a lack of legal capacity here. This case falls on a lot of different pedestals. But putting that aside for a second, the trust doesn't have an interest in the unit because this contract is signed in conjunction with a tenancy. So the unit itself, to the extent that someone would want to search it, at the point they would want to search it belongs to the tenant. Let me come back a moment to this trustee, because that is a question of statutory standing, isn't it? I mean, you could have a law that made a trustee the person or the other. So that is something where we are permitted to assume standing if we wish to and come out the same way. We can't assume constitutional standing, but we can assume statutory. So that's why that issue, while a very interesting one, I think may wash out. I mean, I think under New York law the trust isn't a legal entity, but I think it's irrelevant. The point is they don't have a Fourth Amendment. There is no waiver of any Fourth Amendment right. The overwhelming, and there's no facial challenge because the overwhelming number of searches that the HAP contract authorizes, even if we assume away the other voucher programs and all of that, and the fact that there's nothing on its face here or in the Federal law that authorizes unlawful searches or excessive searches, searches that are unreasonable. The only thing that's authorized is a request as pertinent to the HAP contract. So if we said to them, you have to give me your cell phone record or face a criminal penalty, that would be Patel. But that's not what the HAP contract authorizes. It authorizes a request for books and records as relevant to the HAP contract, which, if you look at the Federal regulations, just means how much do you charge for your rent and is this a fair rent for this unit. Now, there's no suggestion anywhere that anybody could ever take their cell phone from the beneficiary of the trust or the trustee because that's not how it works. If there was some allegation of fraud and we had to go forward, there would be a  But that's part of the precompliance review process that this entire scheme, which is entirely lawful, incorporates. And I think that Hudson Shore, a recent case from this Court, addresses that and says, even if it doesn't explicitly say it in the scheme, it's obvious that you come to the door as an inspector and you say, I want to see whether this unit has hot water. And if for some reason the tenant, the building owner said, I don't want to show you my boiler, we go back and we have an entire system in place to inspect buildings when we suspect they don't have a functional boiler or a gas leak. And we use those systems in order to comply with the Fourth Amendment by getting an administrative warrant. For that reason also, nothing within the searches that they even hypothetically contemplate would violate the Fourth Amendment. They can't state a facial challenge. And that, they say, is the only challenge that they try to bring. Even if they were bringing a facial challenge, though, it would be barred by Younger because their theory that Younger only applies to as-applied challenges is also just legally incorrect. So this Court should affirm for many of the reasons. Thank you. Thank you. Good morning, and may it please the Court. Evan Henley for Safe Horizon. Local Law 10 is an essential protection for over 130,000 New York City households. Describe Safe Horizon to me, please. Safe Horizon is an organization that provides a number of services, but most importantly for this case, it serves unhoused and unstably housed youth. So it helps them with housing searches. It helps them satisfy their daily needs. They have a number of drop-in centers. And importantly for this case, Safe Horizon worked with the city to help over 200 of their clients obtain emergency housing vouchers, which is a type of Section 8 voucher. It's not a public corporation or a public organization? It's a nonprofit organization, Your Honor. And so because of that, Safe Horizon has insight into how the Section 8 process works because it's worked hand-in-hand with those clients as they apply for units. And so it's an essential protection for over 130,000 New York City households representing some of the most vulnerable members of our society, including Safe Horizon's homeless youth clients, elderly people with disabilities, and survivors of domestic violence. Its objective is to give voucher holders a fair chance to obtain the safe and decent housing that Section 8 helps them afford and to give them a chance to live in neighborhoods that offer opportunities that have long been closed off to them due to prejudice and bias. Without Local Law 10, many of these households would remain homeless or unstably housed. The City Commission on Human Rights did not initiate a proceeding against the trust and related persons because they refused to consent to a search. Rather, the trust's property manager told a voucher holder that they would not accept their voucher, and then the trustee refused to complete the paperwork necessary to start the voucher approval process. The trust has not and cannot allege what would have happened had it submitted the paperwork and triggered an inspection request because it does not know. The trust seeks to invalidate Local Law 10 based on speculation, the distortion of the Section 8 program's requirements, and, ironically, a feeble conception of the Fourth Amendment. And for those reasons, we ask the Court to reject this attempt. So a lot of ground has already been covered, I know, by the other parties, but I just want to address a few points. What is it that's feeble? The trust's claim regarding the HAP contract rests on the argument that the HAP contract is a waiver of its Fourth Amendment rights. But the reason that is not true is not just because of the plain language of the HAP contract. It's also because of the Fourth Amendment. So as the Supreme Court stated in Florida v. Gimeno, an objective reasonableness standard determines the scope of consent to a search. And so when a party signs a contract that's open-ended like the HAP contract, it's unknown what form future searches might take, and there must be a limiting principle, and the Fourth Amendment supplies one. And that's the reason why the Fifth Circuit in Harris-Methodist and the Eleventh Circuit in First Alabama Bank said that the consent, which was open-ended like the HAP contract, only contained consent to such searches that are reasonable under the Fourth Amendment. And so the cases that the trust cites regarding its privacy interests actually cut the other way. It wouldn't be reasonable, and no typical person would think, that signing the HAP contract would open up a landlord's home or a landlord's personal cell phone to searches without there being pre-compliance review or warnings. It opens them up to two things, Your Honor. Number one, reasonable searches within the meaning of the Fourth Amendment. But two, contractual remedies if they obstruct those reasonable searches. So let's say that a PHA did obtain a warrant, and so they could lawfully access a property. If the contract said that expressly, that would be the end of the case, obviously.  The contract doesn't say that. It doesn't say that, Your Honor, but neither did the contracts in First Alabama Bank and Harris-Methodist, and the circuits in both those cases. Then you are saying that we should read the contract as saying no more than reasonable Fourth Amendment searches. And we have no indication yet that New York means the contract to mean anything more than that. It's correct, Your Honor, but given that there is speculation about what may happen, we can look at the common-sense interpretation of that contract and use common-sense contract principles, which New York does use, which include incorporating background laws. I've never seen a common-sense contract principle, but that may be my problem. My time is up, but if I just may quickly address that. So as the United States v. Wells case, I believe it is, that we cite, or case indicates, there are background laws that parties incorporate within the contract without explicitly stating that. And so since this contract relates to government searches, it is just a basic contract interpretation principle that that contract would incorporate the Fourth Amendment, and there's no explicit waiver otherwise. Thank you. All right. Thank you. Could you just address that? Why shouldn't we assume that what you are signing, if you sign, is only to permit searches that are consistent with the Fourth Amendment? And why should we step in until we see any indication that the State means to push you beyond that? A couple of reasons, Your Honor. Number one, the word reasonable does, in fact, appear in the contract. Section 11 of the contract has three provisions, A, B, and C. Reasonable only appears in A. And if I could read to you, it says, The owner must provide any information pertinent to the HAP contract, and the PHA or HUD may reasonably require. But that reasonable term doesn't appear in B and C. And, in fact, C says, The owner must grant access to computerized or other electronic records and to any computers, equipment, or facilities containing such records. Well, in my client's case, the facility containing those records is his house. Do we know that New York is going to read that as anything beyond what it can reasonably ask? No. We don't. I'm not saying that if they did some things, they would violate. But you are asking us to step in when New York has not yet done anything specific that would push us beyond that. Well, it's not just New York. It's also the Federal Government. It's HUD and the Government Accountability Office. And those entities, by the way, can't rely on Article 78 because they don't — they aren't subject to Article 78. You can't use that as pre-compliance review. So we don't know. But there's two parts of the Fourth Amendment. There's consent and there's a warrant. So this is the consent piece. The consent piece is super broad, unreasonably broad. And that's what we're worried about. But I want to address a couple other points. One question this Court has had is until there's a search, what matters? What happens? Well, in Patel, no search occurred. In Kamara, no search occurred. In Sokolov, which is a New York State Court of Appeals case, no search occurred. People raised their rights before the search occurred. And that totally gives them standing. But isn't that distinct, though, when you're talking about there's literally an officer standing in front of you saying, let me search, you're going to be arrested, versus we've signed this contract, in the future this may happen. If we refuse, that might be, I mean, there's, it feels like there's steps away from those cases. Maybe, but the problem also here is there is, everyone keeps talking about how there's an opportunity for later pre-compliance review. But there isn't. So those inspectors, when they show up at your door, there is no statutory framework under which they can obtain a warrant. The parties to my right have identified a bunch of city laws. They apply to the buildings department. They apply to the inspector general. But they don't apply to the State of New York. And the State of New York is one of the PHAs operating here in New York City. And so there's no opportunity for them, and there's no opportunity for HUD, or Government Accountability Office, to come in and apply for a warrant. And there's no standard by which that warrant would be weighed. Right, but there's also no ability for them to conduct a search or to arrest someone, correct? This isn't a criminal proceeding, is it? No, but they can find them. And eventually, if they continue to not comply, they can penalize them criminally. Thank you. Thank you very much. Thank you to all of you for your arguments. We'll take the case under consideration.